IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DANIEL FEIERTAG**, *et al.*, | : | |
| | : | Case No. 14-CV-2643 |
| Plaintiffs, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Jolson |
| **DDP HOLDINGS, LLC d/b/a APOLLO RETAIL SPECIALISTS, LLC**, | : | |
| | : | |
| Defendant. | : | |

## OPINION & ORDER

Before the Court are parties' Joint Motion for Final Class and Collective Action Settlement Approval (Doc. 94), Plaintiffs' unopposed Motion for Attorney Fees (Doc. 95), and the September 8, 2016 Fairness Hearing concerning the same. Because the Settlement Agreement between parties (the "Agreement") is fair, reasonable, and adequate in light of the factual, legal, practical, and procedural considerations raised by this suit, the Court **CERTIFIES** the classes under the Fair Labor Standards Act and Rule 23, and **APPROVES** the proposed settlement, **DISMISSING** the FLSA and state-law wage claims in this action. The Court also **GRANTS** Plaintiffs' request for attorney fees amounting to $228,382.50, 30% of the total settlement amount; litigation expenses and costs of $10,400; $2,500 in administration costs; and class representative awards totaling $2,100.

### I. BACKGROUND

#### A. Litigation

Plaintiff Daniel Feiertag, on behalf of himself and all other persons similarly situated, initiated this lawsuit by filing a collective and class action complaint with the Court on

1

December 16, 2014. (Doc. 1.) Plaintiff alleged that Defendant DDP Holdings, LLC d/b/a Apollo Retail Specialists, LLC ("Apollo") engaged in employment practices that violated the Fair Labor Standards Act ("FLSA"), 20 U.S.C. § 201, *et seq.*, and the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code § 4111.01, *et seq.* Plaintiff requested opt-in class certification for FLSA violations under § 216(b) of the FLSA, and Federal Rule of Civil Procedure 23 opt-out class certification for violations of his Ohio claim.

On May 7, 2015, Plaintiff filed a First Amended Complaint, adding Demetrius Swink as co-Plaintiff pursuing a Fair Credit Reporting Act ("FCRA") (15 U.S.C. § 1681, *et seq.*)[1] Rule 23 opt-out class action claim. (Doc. 44.)

Parties agreed to mediate the FLSA and state-law wage claims early in litigation. (Doc. 94 at 2.) On June 10, 2015, at a mediation conducted by the Hon. Magistrate Judge Mark R. Abel, parties resolved several contentious issues, achieving a tentative settlement that was memorialized in a Memorandum of Understanding. (Joint Status Report, Doc. 49.) After that mediation, the parties worked through disagreements over language contained in the settlement documents, and Defendant was given time to gather and furnish to Plaintiff voluminous payroll and hour data spanning thousands of work shifts. (*Id.* at 2-3.)

On February 24, 2016, Magistrate Judge Abel presided over a second mediation, during which the parties reached a full resolution of Plaintiffs' claims. (Doc. 94 at 2.)

On April 7, 2016, Plaintiff filed his Second Amended Complaint alleging the same as the first and adding class-action claims for violations of employment laws of various states besides Ohio. (Doc. 86.) The Second Amended Complaint alleged that Defendant failed to pay overtime in violation of the FLSA and the aforementioned states' laws. Specifically, the claims concern

---

[1] The motions and fairness hearing under consideration concern only Feiertag's class-action FLSA and state-law wage claims.

2

Defendant's changing its compensation plan by suspending payment to field employees for certain commuting time. (Stipulation of Settlement and Release of Claims, Doc. 87-2 at ¶ I.G.) One day later, on April 8, 2016, parties filed a Joint Motion for Preliminary Approval of Class Settlement (Doc. 87), which the Court granted on April 20, 2016. (Doc. 90.)

The Order certified the FLSA Collective Class as "All Field Employees who were employed by Defendant at any time from January 1, 2012, through June 10, 2015, anywhere in the United States, who have pro rata damages of at least $1.00, and opt-in by submitting a timely written Consent Form to Class Counsel." (*Id.*, ¶ 3.) The Order certified the Rule 23 Settlement Class as "All Field Employees who were employed by Defendant at any time from January 1, 2012, through June 10, 2015, who have pro rata damages of at least $1.00; resided in one of the following states: Arkansas, California, Colorado, Illinois, Indiana, Michigan, Missouri, North Carolina, New York, Ohio, Pennsylvania, and Washington; and who do not opt out or request exclusion from the Settlement Agreement." (*Id.*, ¶4.)

The Order named Nichols Kaster, PLLP; Nacht, Roumel, Salvatore, Blanchard & Walker, P.C.; and Meizlish & Grayson, Inc. as Class Counsel for the Settlement Class, naming Nichols Kaster, PLLP to serve as lead Class Counsel. (*Id.*, ¶ 5.)

### B. Settlement Agreement

The Agreement seeks to resolve all FLSA and state-law wage claims in the suit. Under the Agreement, parties agree to settle the case for $761,275.00, which includes deductions for attorney fees amounting to $228,382.50 (30% of the settlement amount), litigation expenses and costs of $14,000,[2] $2,500 in administration costs, and class representative awards totaling

---

[2] The Agreement overestimated litigation costs, which Plaintiff now avers amount to $10,400 – the remaining $3,600 has been added to the settlement fund. (*See* Doc. 94 at 4, fn. 2.)

$2,100, leaving a net settlement fund of $514,192.50 divided among 2,456 eligible participants. (Doc. 94 at 4.) Individual allocation was based on a two-round damages analysis.

First, Plaintiffs used Defendant's timesheet data to determine eligible overtime damages stemming from Defendant's compensation system under the FLSA and any applicable state law. Next, Plaintiffs reviewed additional mileage data related to travel time, and attempted to calculate the number of compensable overtime hours spent traveling. (*Id.*) Class counsel calculated each settlement member's pro rata share of the gross settlement amount after deductions for contingency fund, attorney fees and costs, settlement administration expenses, and class representative awards. (*Id.*) Pro rata shares were weighted at 75% of their total federal law damages, reflecting "the reasonable risks and potential difficulties in obtaining Rule 23 class certification had the case not resolved and Plaintiffs moved for class certification." (*Id.*)

After the June 27, 2016 deadline to respond to the Notice of Settlement lapsed, Class Counsel calculated an allocation of settlement amounts for the 1,543 Settlement Class Members. (*Id.* at 5.) Under the Agreement, any unused or unclaimed funds will be reallocated to the individuals participating in the settlement as follows:

> i. First the FLSA portion of funds allocated to Potential Settlement Class Members who did not timely return a Consent Form to Plaintiffs' Counsel were re-allocated on a pro rata basis to the FLSA Collective, capped at 100% of their unliquidated damages, as calculated by Plaintiffs' Counsel and agreed upon by Defendant's Counsel;
>
> ii. Second, the resultant allocations were rebalanced and redistributed on a pro rata basis to each member of the Rule 23 Settlement Class, capped at 100% of their unliquidated damages as calculated by Plaintiffs' Counsel and agreed upon by Defendant's Counsel;
>
> iii. Third, the resultant allocations were rebalanced and redistributed on a pro rata basis to each member of the FLSA Collective, capped at 100% of their liquidated (double) damages, as calculated by Plaintiffs' Counsel and agreed upon by Defendant's Counsel;

4

>iv. Fourth, the resultant allocations were rebalanced and redistributed on a pro rata basis to each member of the Rule 23 Settlement Class, capped at 100% of their liquidated (double) damages as calculated by Plaintiffs' Counsel and agreed upon by Defendant's Counsel; and
>
>v. Fifth, after each member of the Settlement Classes is paid 100% of their liquidated damages as calculated by Plaintiffs' Counsel and agreed upon by Defendant's Counsel, any funds remaining from the reallocations described in this paragraph shall be retained by Defendant.

(*Id.*) As it stands, none of the $761,275.00 will revert Defendant. (*Id.* at 6) (citing Srey Decl., Doc. 95-1, ¶ 21.)

### C. Claims Process

Consistent with the Court's Preliminary Approval Order (Doc. 90), Class Counsel mailed both the Hybrid and FLSA Notices of Settlement on April 27, 2016. (*Id.*) (citing Doc. 94-1, ¶ 7.) Class Counsel also emailed all eligible Settlement Class Members on May 3, 2016, attaching a "generic" version of the Notices to their last-known email address as provided by Defendant. (*Id.*) The Notices provided potential Settlement Class Members information about the terms of the settlement, and informed them about the allocation of attorney fees, and explained their right to object or exclude themselves from settlement. (*Id.*) The Notices also provided potential members information regarding the date, time, and place of the Fairness Hearing. (*Id.*) (citing Doc. 87-2, Ex. 1-2.)

Over the 60-day claims period, Class Counsel performed traces for alternative addresses, and re-mailed Notices of Settlement to any potential Settlement Class Member whose Notice was returned as undeliverable. (*Id.*) Of the 301 undelivered Notices, Class Counsel mailed 219 to available alternate addresses, of which only 18 were again returned as undeliverable. (*Id.*) On June 20, 2016, Class Counsel sent a reminder email to all individuals who had not yet sent in a

5

Claim Form, advising them of the deadline and the importance of reviewing the Notices of Settlement, and urging them to call Class Counsel with any questions or concerns. (*Id.* at 6-7)

At the close of the claim period, 883 of 2,456 eligible persons opted in to the FLSA Collective (36% participation). (Doc. 94-1, ¶ 7.) Of the 1101 eligible Rule 23 Settlement Class Members, only three requested exclusion from the Settlement (99% participation). (Doc. 94-1, ¶¶ 6-7.) Class Counsel have received no objections to the proposed Agreement. (*Id.*, ¶ 7.)

## II. ANALYSIS

### A. Final Certification and Final Approval

The Court has already certified the Rule 23 Settlement Class and conditionally certified the FLSA Collective. (*See* Doc. 90.) The Court finds that nothing has changed with regard to the appropriateness of class certification under Rule 23 or the approval of Class Counsel.

As to FLSA certification, the Court's role in approving a settlement of a FLSA collective action "is comparable to that of a court in a settlement of a class action brought pursuant to Fed. R. Civ. P. 23." *Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012). Because the purpose of the FLSA is to ensure that covered employees receive a "fair day's pay for a fair day's work," *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981), its provisions are mandatory and "generally not subject to bargaining, waiver, or modification by contract or settlement," but an exception to this general rule applies when a court reviews and approves a settlement in a private action under 29 U.S.C. § 216(b) for unpaid minimum wages or, as here, unpaid overtime compensation. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 713 (1945)). The Court's task in approving such a settlement is to ensure that there is a "bona fide dispute between the parties as to the employer's

liability under the FLSA, lest the parties be allowed to negotiate around the FLSA's requirements concerning wages and overtime." *Kritzer*, 2012 WL 1945144 at *5.

The Court finds that the Agreement resolves a bona fide dispute under the FLSA. Plaintiff alleges that Defendant violated the FLSA by failing to pay proper overtime wages. (Second Am. Compl., Doc. 86, ¶¶ 39-45, 88-91.) Specifically, Plaintiff avers the following: Plaintiffs in the classes are non-exempt employees of Defendant who performed various tasks, including constructing displays, product assembly, store construction, wiring and electrical work, erecting signage for advertising, and installing and switching out coolers for refrigerated food. (*Id.*, ¶¶ 25, 27.) Defendant compensated the classes under a pay plan consisting of four types of pay: (1) sign-in, sign-out; (2) piece rate; (3) flat rate; and (4) project pay. (*Id.*, ¶ 26.)

Plaintiff alleges that Defendant paid only a portion of overtime premiums owed for SISO assignments, and no overtime premium owed for any of the other assignments. (*Id.*, ¶¶ 28-29.) For example, Defendant gave Feiertag a flat-rate assignment from June 7, 2014 through June 12, 2014. (*Id.*, ¶ 32.) Defendant's time records show that Feiertag worked 71.75 hours during this work week, which would mean he was owed an overtime premium for 31.75 hours. (*Id.*) Feiertag was not sufficiently compensated for the hours he worked. (*Id.*) Plaintiff alleges that Defendant was aware, or should have been aware, that Plaintiffs were owed overtime premiums both because Defendant kept records of class members' hours, and because Feiertag personally complained to his district manager of underpayment for overtime hours, to which the manager replied via email that "flat rate hours unfortunately do not track to overtime if you are being paid the flat rate pay." (*Id.*, ¶¶ 35-37.)  Allegations of underpayment for overtime hours worked raise a bona fide dispute under the FLSA, *see Dillworth*, 2010 WL 776933 at *5, 29 U.S.C. § 216(b), and the Agreement resolves them.

7

### B. Sufficiency of Notice

In class actions certified under Rule 23(b)(3), notice must meet the requirements of both Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e). Rule 23(e) specifies that no class action may be settled, dismissed, or compromised without court approval, preceded by notice to class members. Fed. R. Civ. P. 23(e). Rule 23(c)(2) requires that notice to the class be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. V. Gen. Motors Corp.*, 497 F.3d 615, 629-30 (6th Cir. 2007) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Here, the Settlement Notice "'fairly apprise[d] the prospective members of the class of the terms of the proposed settlement' so that class members [could] come to their own conclusions about whether the settlement serves their interests." *Id.* at 630 (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975)). The Notice "explained its purpose, discussed the nature of the pending suit and proposed class and accurately summarized the [ ] settlement agreement." *Id.* At the Fairness Hearing, Class Counsel averred that fewer than 10 of the 2,456 eligible class members were not notified, and Defendant averred that Class Counsel used the best possible yet reasonable means to effectuate notice. The Court finds that notice was sufficient.

**C. Whether Fair, Reasonable, and Adequate**

Before approving a settlement agreement, the Court must determine if the settlement is "fair, adequate, and reasonable, as well as consistent with the public interest." *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990). In determining whether the proposed settlement is fair, reasonable and adequate, the Court considers several factors:

(1) the risk of fraud or collusion;

(2) the complexity, expense and likely duration of the litigation;

(3) the amount of discovery engaged in by the parties;

(4) the likelihood of success on the merits;

(5) the opinions of class counsel and class representatives;

(6) the reaction of absent class members; and

(7) the public interest.

*UAW*, 497 F.3d at 631. In reviewing a proposed class action settlement, the district court has "'wide discretion in assessing the weight and applicability' of the relevant factors." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (quoting *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205-06 (6th Cir. 1992)).

The court may limit the fairness hearing "to whatever is necessary to aid it in reaching an informed, just and reasoned decision." *Tenn. Ass'n of HMOs*, 262 F.3d 559, 567 (6th Cir. 2001) (citations omitted). A court should not, at the fairness hearing, "determine the merits of the controversy or the factual underpinning of the legal authorities advanced by the parties." *Williams v. Yukovich*, 720 F.2d 909, 921 (6th Cir. 1983); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 904 (S.D. Ohio 2001). However, a court "cannot 'judge the fairness of a proposed compromise' without 'weighting the plaintiff's likelihood of success on the merits against the

9

amount and form of the relief offered in the settlement.'" *UAW*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)). "Parties to the settlement must proffer sufficient evidence to allow the district court to review the terms and legitimacy of the settlement." *Id.* at 635.

Here, the Court finds that the proposed settlement is fair, adequate, and reasonable. All seven factors militate in favor of approval of the Agreement.

First, the Agreement is not the result of fraud or collusion. By all accounts Plaintiffs have been represented by competent and zealous counsel since filing suit. Bruce Meizlish and Deborah Grayson, of Meizlish & Grayson, who are experienced wage-and-hour attorneys, initiated this litigation against Defendant over a few contested issues, which soon burgeoned in scope and complexity through the course of litigation. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (holding that approval of a settlement is appropriate where "initiation of the action by the employees provide some assurance of an adversarial context"). And the Agreement is the result of arm's-length mediation overseen by an experienced, impartial mediator.

The second and third factors also weight in favor of approving the Agreement. Defendant has culled and furnished voluminous timesheets and other data to Plaintiff during the course of discovery, which gave parties a better handle on the strengths and weaknesses of their respective cases. Parties aver that, absent settlement, continued litigation will require much more discovery and briefing, possibly a trial and even an appeal. Although discovery was largely limited to data, which required more of a technical rather than a legal degree of skill to analyze, and although there was no dispositive motion practice or trial preparation, the Court appreciates the

preparation and cooperation leading to this result. The Court also appreciates that providing relief to class members now will eliminate any uncertainty or delay.

The fourth factor also weighs in favor of approving the Agreement. Although Defendant denies wrongdoing, and although Plaintiffs are confident of their chances at trial, Plaintiffs are aware of the risk inherent in all litigation and, by agreeing to the Settlement, have determined that complete recovery under its terms is preferable to taking their chances at trial.

As to the fifth factor, Class Counsel is experienced and knowledgeable, having "resolved many collective and class overtime lawsuits," and they are "convinced that this settlement is fair and reasonable both standing on its own and when viewed against other overtime settlements." (Doc. 94 at 10) (citing Doc. 87-4, Nichols Kaster Firm Resume.) The Court has no reason to doubt these averments.

The reaction of potential class members also supports approval. 1,543 accepted their offers, and only three of the 1,101 eligible Rule 23 members requested exclusion from settlement. Significantly, no one has objected to its terms, either in writing or at the Fairness Hearing.

The public policy generally supports settlement of class-action lawsuits. *Hainey v. Parrott*, 617 F. Supp. 668, 679 (S.D. Ohio 2007) (citation omitted). Here, the Agreement provides class members immediate relief, avoids further litigation, and frees the Court's judicial resources.

Finally, the Court has a responsibility "to ensure that the distribution of the settlement proceeds is equitable." *Dillworth*, 2010 WL 776933, at *6 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)). Here, the distribution is fair and equitable because Class Members will receive payouts directly related to the amount of time they worked for Defendant and how much

actual unpaid overtime or off-the-clock time they incurred. Notably, after all adjustments are made for unclaimed funds, each Class Member will receive 100% of their nonliquidated damages, and not one cent will revert to Defendant from the settlement fund.

### C. Attorney Fees

The FLSA's attorney fees provision seeks to ensure "effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (internal quotation marks omitted). In calculating the fee award, the Court should not put undue emphasis on the amount of the plaintiffs' recovery because an attorney fee award in a FLSA case "encourage[s] the vindication of congressionally identified policies and rights." *Id.* at 1134-35 (internal quotation marks omitted) (alteration in original). The Court has the discretion to use either the lodestar method or a percentage of the common fund to award attorney fees. *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516-17 (6th Cir. 1993). Regardless of how the award is calculated, the final amount must be reasonable. *Id.* at 516.

To evaluate whether the amount of an award is reasonable, courts consider: "(1) the value of the benefit rendered for the class, (2) society's stake in rewarding attorneys who produce such benefits, (3) whether the services were undertaken on a contingent fee basis, (4) the value of the services on an hourly basis, (5) the complexity of the litigation, and (6) the professional skill and standing of the attorneys involved." *Kritzer*, 2012 WL 1945144, at *9 *(citing Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)).

The Court finds that all factors militate in favor of granting the award of attorney fees.

First, each Class Member will receive at least 100% of their out-of-pocket wage loss as calculated by Class Counsel and approved by Defendant. The process afforded by the Agreement

allows for a much smoother recovery for the aggrieved than otherwise (initiating a lawsuit, conducting individual discovery, etc.)

Second, society's stake in awarding attorneys who bring these wage-violation cases supports an award of attorney fees. Class Counsel recovered overtime damages for 1,543 of Defendant's current or former employees. Without this lawsuit, many of them would not have known what they were owed and, even if they did, would not have found it practicable or in their best interest to vindicate their rights. *See Kritzer*, 2012 WL 1945144 at *9 ("Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own.").

Third, Class Counsel took this case on contingency, devoting over 1,000 hours to the matter leading up to settlement. (Doc. 95 at 7.) Class Counsel have not been compensated for any time or expense since the beginning of this litigation, which weighs in favor of granting an award of attorney fees. *See Gentrup*, 2011 WL 2532922 at *4 (finding that plaintiffs' counsel making "significant investments of time" without compensation weighed in favor of granting attorney fees).

Performing a cross-check of the attorney-fee request using Class Counsel's lodestar is optional, but it also weighs heavily in favor of granting Class Counsels' request. Class Counsel request an amount $64,612.50 less than their lodestar. Awards of common-fund attorney fees in amounts two to three-times greater than the lodestar have been found reasonable. *See Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-cv-1061, 2013 WL 2295880, at *6 (S.D. Ohio May 24, 2013); *Swigart*, 2014 WL 3447947, at *6 (approving multiplier of 2.57 in a FLSA case); *Lowther v. AK Steel Corp.*, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving multiplier of 3.06 in an Employee Retirement Income Security Act case).

As to the fifth factor, this is a complex case spanning twelve states and concerning their respective wage-and-hour laws whose Agreement represents a global settlement of all wage claims under state law and the FLSA. This weighs in favor of approval.

Regarding the sixth factor, Class Counsel were highly skilled. Lead Class Counsel have amassed vast experience in federal courts pursuing class and collective-action litigation. (Doc. 95-1, ¶¶ 5-7, 10.) Similarly, defense counsel are well-matched, specializing in defense-side labor and employment cases nationwide, with 31 offices throughout the United States. (*See www.fisherphillips.com* (last seen Sept. 7, 2016).)

### D. Out-of-pocket Expenses and Administration Costs

The Agreement provides that Class Counsel may seek approval of reasonable out-of-pocket litigation expenses and costs, along with reimbursement for the costs associated with administering the Settlement. (Doc. 87-2, ¶ V.A.3.)

The Court award Class Counsels' $10,400 request for out-of-pocket costs incurred in litigation, because those costs were necessary to litigate this case, and include costs for court-filing fees, legal research, photocopies, postage, process service, and travel and accommodation for mediation. *See In re Packaged Ice Antitrust Litig.*, 2012 WL 5493613, at *8 (E.D. Mich Nov. 13, 2012) (approving costs to plaintiffs' counsel for travel, telephone, printing, Westlaw, and other necessary costs).

The Court further awards Class Counsels' $2,500 request for reimbursement of funds associated with settlement administration. Class Counsel have handled the Notice process, which included (or will include) preparing and mailing the Notices, searching for alternative addresses for all mail returned as undeliverable, mailing settlement award checks to class members, among other services. Based on the averments of counsel, $2,500 seems an entirely reasonable amount

to reimburse for all the effort and resources needed to administer the settlement. Class Counsel indicated at the Fairness Hearing that they have spent approximately $1,991 in settlement administration thus far, and will likely spend more than the $2,500.00 award, but will nonetheless absorb those costs themselves, and they will leave the settlement fund undisturbed.

### E. Class Representative Service Awards

Finally, the Court approves $2,100 to be paid to the twelve Named Plaintiffs, divided as follows: $1,000 to Feiertag, and $100 each to: Randy Akers, William Brown, Charles Burgeson, Victoria Brula, Nicholas Gravell, Michael Greenlee, Kevin Kaiser, Duane Perry, Anthony Rodriguez, Brian Steinberg, and Brice Williams. The Notice to potential class members indicated this proposed award, and not one person objected to it. Defendant likewise does not object to the requested award.

Providing class representative service awards is "[an] efficacious way[] of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). A court's award of such an incentive award is permissible, and reviewed only for abuse of discretion. *Id.* Plaintiffs request $1,000 for Feiertag because, "[w]ithout his valuable assistance and participation, this case would not have been initiated." (Doc. 95 at 14) (citing Doc. 95-1, ¶ 19.) Feiertag provided key information that assisted with investigating, filing, litigating, and resolving this action. (*Id.*) The eleven remaining Plaintiffs assert their claims as class representatives in the Amended Complaint for the additional proposed Rule 23 classes representing the remaining state-law class claims. (Doc. 86.) Comprising 0.276% of the global settlement fund, the amount does not significantly reduce the award to other class members, so there is no concern that awarding named class representatives will be detrimental to class members.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** parties' Joint Motion for Settlement Approval, finding the settlement fair, adequate, and reasonable. The Court **GRANTS** Plaintiffs' request for attorney fees amounting to $228,382.50, litigation expenses and costs of $10,400, $2,500 in administration costs, and class representative awards totaling $2,100. It is **ORDERED** that Defendant will deliver to Class Counsel within 31 days of this Order all settlement checks and settlement funds wired, and Defendant will issue one settlement check to each member of the Settlement Classes as contemplated in the Agreement. Upon completion of the submission of the settlement funds, Class Counsel will notify the Court of any outstanding issues with this matter. If there are none, the Court will then dismiss these claims with prejudice.

**IT IS SO ORDERED.**

                                                                                       s/ Algenon L. Marbley
                                                                                     **ALGENON L. MARBLEY**
                                                                     **UNITED STATES DISTRICT JUDGE**

**DATED:  September 9, 2016**